UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHYUN LEE,<br>Petitioner,<br>v.<br>WARDEN, ADELANTO ICE PROCESSING CENTER EAST FACILITY et al.,<br>Respondents. | Case No. 5:26-cv-06181-SRM-DMK<br><br>**ORDER GRANTING PETITIONER'S HABEAS PETITION [1]; DENYING PETITIONER'S MOTION FOR LEAVE TO AMEND [16]**<br><br>**A237-067-285** |

Before the Court is Petitioner Ahyun Lee's ("Petitioner") Petition for Writ of Habeas Corpus ("Habeas Petition"). Dkt. 1. Respondents (the "Government") have filed an answer and Petitioner filed a reply. Dkt. 14; 15. Additionally before the Court is a preliminary injunction request, where Respondents have filed an opposition. *See* Dkt. 13; 17. Petitioner has also filed a Motion for Leave to Amend her Habeas Petition. Dkt. 16.

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Having reviewed the Parties' arguments, relevant legal authority, and the record in this case, for the reasons below, the Court **GRANTS IN PART** Petitioner's Habeas Petition and **DENIES AS MOOT** the Request for Preliminary Injunction and the Motion for Leave to Amend. Dkt. 1; 16. The Order to Show Cause is **DISCHARGED**. Dkt. 13.

## I. BACKGROUND

Petitioner is a native of South Korea, married to a United States citizen, and currently detained by Respondents at the Adelanto ICE Processing Center. Dkt. 1 at 1–2. She has been living in the United States since 2021, when she lawfully entered the country through the Visa Waiver Program ("VWP"). Dkt. 1 at 5; 2-2 at 6.

On August 10, 2026, Petitioner married Mr. Jin Joo. Dkt 1. at 5; 2-2 at 3. On September 14, 2026, Petitioner's husband filed Form I-130, a Petition for Alien Relative, and Petitioner filed Forms I-485 and I-765, an Application to Register Permanent Residence or Adjust Status, and an Application for Employment Authorization with the United States Citizenship and Immigration Services ("USCIS"). Dkt. 14-1 at 3. The purpose of submitting those applications was for Petitioner to adjust her immigration status to become a lawful permanent resident.

On October 8, 2026, the Los Angeles Enforcement and Removal Operations ("ERO") Field Office received a lead with information from Pacific Enforcement Response Center ("PERC"), in conjunction with the Transportation Security Administration ("TSA"), that Petitioner planned to depart from Los Angeles International Airport ("LAX") to Dallas Fort Worth International Airport on October 10, 2026. Dkt. 14-1 at 2. Pursuant to the report filed on behalf of the United States Department of Homeland Security, it was known that Petitioner had filed for the aforementioned adjustment of status with USCIS, that she has no criminal record, and that she had overstayed her visit to the United States with "no legal impediments for arrest." *Id.* at 2–3.

At the hearing, counsel for Petitioner stated that Petitioner and her husband were planning to move to Texas. As part of their relocation process, they were traveling to Texas on October 10, 2026, when U.S. Immigration and Customs Enforcement ("ICE") agents detained Petitioner at LAX and placed her under arrest. *Id.* at 2. A day later, on October 11, 2026 at 1:26 a.m., Petitioner was served with a "Notice of Custody Determination." Dkt. 14-5 at 2. There, she requested an immigration judge review her custody determination. *Id.* Petitioner remained in ICE custody and was served with a "Warrant for

Arrest of Alien" on October 11, 2026 at 11:39 p.m. *See* Dkt. 14-3; 14-4; 14-5. The "Record of Deportable, Inadmissible Alien" does not state at what time she was apprehended on October 10, 2026. Dkt. 14-1. The Notice to Alien Ordered Removed notes that Petitioner is prohibited from entering, attempting to enter, or being in the United States for a period of 10 years. Dkt. 14-4. Petitioner refused to sign this document. *Id.*

As a result of Petitioner's detention, on October 19, 2026, she filed the Habeas Petition and an *Ex Parte* Application for a Temporary Restraining Order ("TRO Application"). Dkt. 1; 2. The Court granted the Petitioner's TRO Application on October 23, 2026, and issued an Order to Show Cause as to why it should not issue a preliminary injunction. Dkt. 13. In Petitioner's Habeas Petition, she alleges two claims: (i) that her arrest and detention violated the Immigration and Nationality Act ("INA") and Ninth Circuit precedent; and (ii) her Fifth Amendment due process rights. Dkt. 1 at 6–8.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). It functions to challenge and secure release from illegal custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus if the petitioner meets their burden of demonstrating that "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

Petitioner first argues that there is a violation of the INA and Ninth Circuit precedent, specifically, *Momeni v. Chertoff*, 521 F.3d 1094 (9th Cir. 2008) ("*Momeni*") and *Freeman v. Gonzalez*, 444 F.3d 1031 (9th Cir. 2006) ("*Freeman*"). Dkt. 1 at 6–7. Second, she alleges a violation of her Fifth Amendment due process rights. *Id.* at 7–8.

The Respondents' answer concedes that Petitioner is a member of the "Bond Eligible Class certified in *Maldonado Bautista*." Dkt. 14 at 2. This concession provides that Petitioner falls under 8 U.S.C. § 1226(a), thereby entitling her to request release on bond.

8 U.S.C. § 1226(a)(2). In their answer, Respondents request this Court consider its Opposition to Petitioner's TRO Application, filed October 20, 2026. Dkt. 14 at 2. There, Respondents address *Momeni* and *Freeman* in support of its argument that Petitioner cannot marry and belatedly seek to adjust her status after breaching her agreement to leave the United States under the Visa Waiver Program ("VWP"). Dkt. 8 at 2–3. Respondents provide no response to Petitioner's due process claim in their answer. *See generally* Dkt. 14.

As an initial matter, the Court construes Respondents' failure to address Petitioner's due process claim as a concession. *See, e.g., Geng v. Warden of Adelanto ICE Process Ctr.*, No. 5:26-CV-e 04950-ACCV, 2026 WL 3002616, at *2 (C.D. Cal. Oct. 5, 2026) (construing respondent's failure to address petitioner's due process claim as a concession); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (same); *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026) (same). Nevertheless, the Court will first analyze Petitioner's due process claim.

**A. Fifth Amendment Due Process Claim**

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

1. Liberty Interest

It is well-established that the Due Process Clause applies to noncitizens within the United States and that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Here, the Government does not dispute that Petitioner is a noncitizen who has been physically present in the United States since 2021 and has a protected liberty interest in her freedom from detention. *See generally* Dkt. 8; 14. Petitioner's liberty interest is protected

because she has lived in the country for over five years, developed "deep ties" to her community, has no criminal history, and the family business that her husband and family operates employs over 200 local workers. *See* Dkt. 2-2 at 4; *see, e.g.*, *Marcos v. Warden, California City Detention Facility*, 26-CV-05638-TLN (CKD), 2026 WL 2389296, at *4 (E.D. Cal. Aug. 17, 2026) (finding a noncitizen had a protected liberty interest in his continued freedom where he "lived in this country since 2024, supporting his partner and her son, developing substantial ties to his community, and enduring connections of normal life."). Petitioner's liberty interest is further strengthened by the fact that the Government was aware of her presence in the country over the last five years yet allowed her to remain and apply for an adjustment of status.

Accordingly, the Court finds that Petitioner has a continued liberty interest in her freedom from custody.

2. *Mathews* Test

The court must determine "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process "requires some kind of a hearing *before* the State deprives a person of liberty or property" particularly because the loss of liberty "cannot fully be compensated after the fact." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F.Supp.3d 963, 969 (N.D. Cal. 2019).

In determining what procedures are required by Due Process, a district court applies the three-part *Mathews* test, which analyzes the: (i) "the private interest" at stake; (ii) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

a) Private Interest at Stake

The private interests affected here are significant. When determining the private interest at stake, courts look to the degree of potential deprivation. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015). Here, Petitioner has two significantly intertwined private interests: (i) freedom from imprisonment; and (ii) fully adjudicating her adjustment of status applications before USCIS. Because Petitioner has been deprived of her physical liberty, there is a high degree of potential deprivation of these private interests.

Petitioner has been in the country for five years and has developed deep ties to her community as evidenced by her recent marriage. *See* Dkt. 2-2 at 3–4. Her desire to remain in the country with her husband is reflected in her prompt submission of her adjustment of status applications to USCIS, only one month after her marriage. *Id.* at 3. She and her family own and operate a business that employs over 200 local workers. *Id.* at 4. Her husband declares that if Petitioner is deported, it would cause "severe, irreparable destruction to our family and business operations." *Id.*

Moreover, Petitioner has an interest in seeking to adjust her status as a lawful permanent resident. *See id.* at 3–4. This interest is jeopardized by the collateral consequences created by the alleged unlawful detention of Petitioner. As a result of Petitioner's arrest and detention at LAX, her pending adjustment of status application before USCIS has been impacted, and her absence could be construed as an abandonment of her application, thereby constituting grounds for terminating its adjudication. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A); Dkt. 2 at 3–4. Moreover, ICE issued an order preventing Petitioner from entering, attempting to enter, or being in the United States for a period of 10 years. Dkt. 14-4. Thus, this factor weighs strongly in Petitioner's favor.

b) Risk of Erroneous Deprivation

The risk of erroneous deprivation is serious. Immigration detention is civil and not criminal in nature, and is constitutionally permissible only when it serves a legitimate purpose, such as ensuring a noncitizen appears at a future immigration procedure and if

they pose a danger to the community. *See Demore v. Kim*, 538 U.S. 519, 521 (2003). Here, the Government does not and cannot argue that Petitioner is a danger to the community. Petitioner has lived in the country for several years and has no criminal record or prior immigration enforcement contact. *See* Dkt. 14-1. Further, she does not present a flight risk because she recently married and plans to build a future with her husband here, as apparent from her adjustment of status applications.

The Government also concedes that Petitioner is a *Maldonado Bautista* class member who is subject to § 1226(a). Dkt. 14 at 2. Petitioner is thus entitled to a pre-deprivation hearing and notice. She received neither. In fact, despite the Government's prior knowledge of Petitioner's upcoming flight, the fact that she had married a United States Citizen, applied for an adjustment of status, applied for work authorization, and that she had no criminal record, they did not issue a warrant or final removal order until one day after she was detained at LAX. *See* Dkt. 14-1; 14-3; 14-4; 14-5. There is no information as to when she was apprehended at LAX or how long she was detained pending the Government's post-hoc production of the documents attached as exhibits to its opposition. Dkt. 14-1; 14-2; 14-3; 14-4; 14-5. While the Court recognizes that the Government has an interest in enforcing immigration laws, the Court finds that the Government's interest in placing Petitioner in detention without a hearing is low. *See J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost.") (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Thus, this factor also favors the Petitioner.

**B. Violation of the INA and Ninth Circuit Authority**

Petitioner alleges that because she entered the United States lawfully under the VWP and "affirmatively" filed an "adjustment packet" with USCIS before any ICE enforcement contact, her right to adjust her status is governed and protected by *Freeman*. Dkt. 1 at 6–7. She further contends that because she is not attempting to utilize a "defensive, post-custody filing," her situation is distinguishable from the facts underlying *Momeni*. *Id.* She points to USCIS's Policy Memorandum 602-0093 dated November 14, 2013, in support of her

contention that ICE's attempt to summarily remove Petitioner forces the automatic abandonment of Petitioner's adjustment application over which USCIS has primary jurisdiction. *See id.* at 7; 10 at 10–13; 10-2.

Respondents do not address this argument in their Opposition to the Habeas Petition, but in their Opposition to the TRO Application, they counter that the Ninth Circuit "squarely explained in *Momeni* why Petitioner's situation does not fall under *Freeman* and why [Petitioner] is barred from now challenging the VWP limitations." Dkt. 8 at 2.

While the facts underlying *Freeman* are distinguishable, the Ninth Circuit held that a VWP entrant is "assimilated into the procedural world of adjustment of status applications once an immediate relative petition is properly filed and not relegated to lesser rights by virtue of the VWP's no-contest clause." *Freeman*, 444 F.3d at 1043. Two years later, in *Momeni*, Petitioner, a VWP entrant, applied for an adjustment of status after the 90-day VWP period had elapsed, and after removal proceedings had begun against him. *Momeni*, 521 F.3d at 1095. There, the Ninth Circuit found a relevant circumstance in the timing of each petition for adjustment of status and concluded that because *Freeman* had married and applied before the 90 days had expired, but *Momeni* had applied after the 90 days had expired, *Momeni* was disqualified from circumventing the VWP's no contest clause by means of an adjustment of status. *Id.* at 1096. *Freeman*, they held, was an exception to the rule that "an alien who comes to the United States under the Visa Waiver Program generally cannot avoid his or her waiver of the right to contest removal." *Id.* The Court held that "to allow an adjustment of status petition after the 90 days has expired would create an avoidable conflict between the adjustment of status statute and the no contest statute." *Id.*

However, five years later, on November 14, 2013, USCIS issued Policy Memorandum PM-602-0093. In it, they accounted for both the *Freeman* and *Momeni* decisions and critically, directed USCIS employees that "***an individual admitted under the VWP who is also an immediate relative is not precluded from seeking adjustment of status, even after the VWP period has expired***." Dkt. 10-2 at 2. (emphasis added).

Moreover, the memorandum distinguished *Freeman* and *Momeni* as "concern[ing] only the individual's inability to contest removal. They do not address whether the Department of Homeland Security (DHS) can, as a matter of discretion, decline to seek the individual's removal and grant adjustment if the individual is eligible. Nor do these decisions preclude a VWP overstay who is not subject to a removal order from filing a Form I-485 with USCIS." *Id*. Importantly, the policy memorandum instructs in pertinent part:

> USCIS field offices shall adjudicate adjustment of status cases filed by immediate relatives of US citizens who were last admitted to the United States under the VWP, in accordance with section 245 of the INA. This includes cases where Form I-485 was filed after the 90-day period of admission. Adjudication shall occur prior to referral to ICE unless: ICE has issued a removal order.

*Id.* Here, unlike in *Momeni*, Petitioner applied for an adjustment of status after the 90-day period of admission had expired, but before ICE sought to detain her. Thus, at the time Petitioner filed her Form I-485, ICE had not issued a removal order. Pursuant to USCIS's own policy memo, Petitioner's application shall be adjudicated by USCIS. Dkt. 10-2 at 2. While the decision in *Momeni* sought to construct the adjustment of status statute and the no contest statute in a manner that would avoid conflict, here, ICE has invited conflict by detaining Petitioner and invoking the very exception that disrupts the otherwise lawful pathway permitting the Petitioner to seek an adjustment of status. However, in order to grant the relief requested, the Court must not resolve the question of whether ICE must defer execution of a final order of removal.

**C. Remedy**

At the time of Petitioner's apprehension at LAX, she was arrested without a warrant, notice, or a pre-deprivation interview. Petitioner has shown that her due process rights were violated. The appropriate remedy for such violation is to place Petitioner in the position

she was in prior to the violation. *See e.g.*, *Badalyan v. Bondi*, ED CV 26-1401 FMO (JDE), 2026 WL 1365087, at *2 (C.D. Cal. May 15, 2025); *Singh v. Janecka*, No. 5:26-CV-01466-AYP, 2026 WL 1334832, at *6 (C.D. Cal. May 8, 2026). Therefore, the Court concludes that Petitioner's release "is necessary to return him to the status quo." *R.N.G. v. Semaia*, 838 F. Supp. 3d 1035, 1048 (C.D. Cal. 2026) (citation omitted).

In addition to releasing Petitioner from custody and returning her to the status quo, the Government may not remove Petitioner without two court days' written notice. Further, USCIS may continue to exercise its discretion in adjudicating Petitioner's pending applications. Particularly, the Court notes that but for Respondents' unlawful detention of Petitioner, she would continue seeking USCIS's discretion in considering her adjustment of status applications pursuant to USCIS's own policy memorandum. To the extent USCIS may account for these circumstances in exercising its discretion over Petitioner's application, the Court urges USCIS to do so.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Petitioner's Petition for Writ of Habeas Corpus **IN PART** and **ORDERS** the following:

1) Respondents shall release Petitioner (A237-067-285) from custody and return any of her personal belongings to her within twenty-four (24) hours, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing;
2) Respondents must file with the Court a Notice of Compliance within twenty-four (24) hours of releasing the Petitioner;
3) Respondents must file with the Court a Notice of Compliance within twenty-four (24) hours of releasing the Petitioner;
4) Respondents are **ENJOINED** from re-detaining Petitioner without, at a minimum, an individualized written notice, two days in advance, describing the change in circumstances necessitating her arrest and detention, and a pre-deprivation bond hearing before an immigration judge;

5) USCIS may continue to exercise its discretion in adjudicating Petitioner's pending applications, Forms I-765 and I-485; and her husband's I-130;

6) Petitioner's request for EAJA fees is **HELD IN ABEYANCE** pending the U.S. Supreme Court's decision of *Montoya Palacios v. Liggins*, No. 25-1223;

7) Because the relief granted in this Order, Petitioner's request for a preliminary injunction and Motion for Leave to Amend are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated: November 4, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE